624 S.E.2d 856

**Posey Dwight TOLLIVER and Beverly S. Tolliver, Plaintiffs Below, Appellants,**

**v.**

**Terry MAXEY and Carolyn Maxey, Defendants Below, Appellees.**

**No. 32557.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 7, 2005.

Decided Nov. 23, 2005.

Dissenting Opinion of Justice Starcher Dec. 16, 2005.

**420**

Sherri D. Goodman, Esq., Goodman Advocacy, Charleston, for the Appellants.

Brent K. Kesner, Esq., Daniel W. Greear, Esq., Ellen R. Archibald, Esq., Kesner, Kesner & Bramble, PLLC, Charleston, for the Appellees.

PER CURIAM:

In this appeal, appellants Posey Dwight Tolliver and Beverly S. Tolliver challenge the June 11, 2004, order of the Circuit Court of Raleigh County, West Virginia, denying their motion to reinstate their personal injury action filed in that Court against appellees Terry Maxey and Carolyn Maxey. The action was dismissed on December 30, 1999, for failure to prosecute. In denying the motion to reinstate, the Circuit Court held that the appellants neither established good cause for reinstatement under Rule 41(b) of the West Virginia Rules of Civil Procedure nor filed the motion within a reasonable time as required under Rule 60(b)(6) of the West Virginia Rules of Civil Procedure.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. Upon thorough consideration, and for the reasons stated below, this Court is of the opinion that the conclusions of the Circuit Court with regard to both Rule 41(b) and Rule 60(b)(6) were within the Circuit Court's discretion. Accordingly, the June 11, 2004, order denying the appellants' motion to reinstate is affirmed.

I.

Factual and Procedural Background

On March 16, 1993, Beverly S. Tolliver was riding in an automobile driven by her husband, Posey Dwight Tolliver, in Beckley, West Virginia, when their vehicle was struck by a Chevrolet truck operated by Terry Maxey. The truck was owned by Maxey's mother, Carolyn Maxey. Beverly S. Tolliver sustained injuries to her neck, back, shoulders and head, and Terry Maxey fled the scene. The Tollivers subsequently alleged that, at the time of the accident, Terry Maxey was driving upon a license which had been revoked for DUI.[1]

---

1. It should be noted that, although Carolyn Maxey was insured by Allstate Insurance Company, the accident triggered the uninsured-underinsured policy provisions of the Tollivers' insurer, Erie Insurance Company. In 2003, the Tollivers filed a bad faith claim against Erie in the Circuit

In 1995, the appellants, Posey Dwight Tolliver and Beverly S. Tolliver, filed a personal injury action in the Circuit Court of Raleigh County against the appellees, Terry Maxey and Carolyn Maxey. The appellants sought compensatory and punitive damages and were represented by attorney Robert Browning, Jr., of Pineville, West Virginia. Beyond filing the complaint, however, Browning did nothing upon the appellants' behalf. He failed to reasonably communicate with the appellants and did not keep appointments to meet with them. Discovery requests from the appellees were virtually ignored.

On November 9, 1999, the Circuit Court issued a notice stating that, inasmuch as there had been no order or proceeding in the action for more than one year, the action would be dismissed pursuant to Rule 41(b) of the West Virginia Rules of Civil Procedure unless the appellants filed a motion setting forth reasons why the action should not be dismissed. As Rule 41(b) provides: "Any court in which is pending an action wherein for more than one year there has been no order or proceeding ... may, in its discretion, order such action to be struck from its docket; and it shall thereby be discontinued." [2] Soon after, Browning filed a motion opposing dismissal alleging: (1) that Ms. Tolliver was still under medical treatment and that the action, therefore, was not ready to settle, (2) that responses to the appellees' discovery requests would be furnished within 15 days and (3) that the Tollivers were entitled to an adjudication of the action on the merits.

Nevertheless, on December 30, 1999, the Circuit Court entered an order dismissing the action pursuant to Rule 41(b) for failure to prosecute. In the order, the Circuit Court noted that, although ongoing medical treatment might warrant continuing a scheduled trial, neither such treatment nor the statement that the appellants are entitled to an adjudication on the merits would excuse the failure to prosecute the action. Moreover, as the Circuit Court noted, Browning never filed the responses to discovery as promised.

Browning never informed the appellants that the action had been dismissed. Nor did he file a motion seeking reinstatement of the action.[3] The appellants did not learn of the dismissal until May 2002 when Ms. Tolliver was informed by an employee of her insurer, Erie Insurance Company, that the action was no longer on the Circuit Court's docket.[4] Thereafter, the appellants consulted with attorney Timothy Lupardus who referred them to their current attorney, Sherri D. Goodman. Ms. Goodman was retained by the appellants in August 2002.

In April 2003, the appellants, represented by Ms. Goodman, filed a legal malpractice action in the Circuit Court of Raleigh County against Browning. At that time, Ms. Goodman was of the opinion that, inasmuch as the

---

Court of Raleigh County for failure to pay insurance proceeds with regard to this accident. The claim was based upon the Tollivers' assertion that the liability of the Maxeys for the accident was clear and that Terry Maxey had an extensive record of driving violations. Erie Insurance Company denied any bad faith, and the claim, to date, remains unresolved. The question of insurance and the Tollivers' bad faith claim are not a part of this appeal.

**2.** Similarly, *W. Va.Code*, 56–8–9 (1995), provides, in part:

Any court in which is pending any case wherein for more than one year there has been no order or proceeding but to continue it, or wherein the plaintiff is delinquent in the payment of accrued court costs, may, in its discretion, order such case to be struck from its docket; and it shall thereby be discontinued.

**3.** In January 2004, this Court suspended Browning's license to practice law in West Virginia for reasons unrelated, but similar to, this action. *See, Lawyer Disciplinary Board v. Robert Browning, Jr.,* Supreme Court no. 31241 (Order January 16, 2004). Reinstatement of Browning to the practice of law was conditioned, *inter alia*, upon: (1) a psychological evaluation, (2) the following of treatment recommendations, (3) the willingness to undergo a supervised practice of law and (4) the maintenance of adequate legal malpractice insurance.

**4.** The appellants state that, even though they did not learn of the dismissal until May 2002, they monitored the action during the time of their representation by Browning. Ms. Tolliver periodically telephoned Browning concerning whether the action would settle and provided him with a record of her headaches and with updated information concerning her medical treatment. Moreover, at Browning's request, Ms. Tolliver gave him written answers to interrogatories filed by the appellees. As indicated above, however, Browning never filed any responses to discovery requests with the Circuit Court.

appellants' personal injury action had been dismissed three-and-a-half years earlier in 1999, it was too late to move to reinstate the action before the Circuit Court. As Rule 41(b) further provides: "The Court may, on motion, reinstate on its trial docket any action dismissed under this rule ... *within three terms after entry of the order of dismissal or nonsuit;* but an order of reinstatement shall not be entered until the accrued costs are paid." (emphasis added)[5] From the 1999 dismissal until the appellants' discovery thereof in May 2002, Browning had not filed a motion to reinstate the action, and more than three Circuit Court terms had expired.[6]

Thereafter, in September 2003, Ms. Goodman became aware of a limited exception to the three term limit for a motion to reinstate. That exception, set forth in syllabus point 1 of *Arlan's Dept. Store v. Conaty,* 162 W.Va. 893, 253 S.E.2d 522 (1979), stated that an action, dismissed under Rule 41(b) for failure to prosecute, could be reinstated beyond the three term limit "where the parties consent, or where good cause is shown such as fraud, accident or mistake." Consequently, on September 24, 2003, Ms. Goodman, citing *Arlan's,* filed a motion to reinstate the personal injury action pursuant to Rule 41(b). In addition, the motion incorporated a request

for relief from the 1999 dismissal pursuant to Rule 60(b)(6).[7] The motion was filed during the fourth term of the Circuit Court of Raleigh County following the beginning of Ms. Goodman's representation of the appellants,[8] some twelve terms after the 1999 dismissal.

Following a hearing, the Circuit Court entered the order of June 11, 2004, denying the motion to reinstate. The Circuit Court held that the appellants neither established good cause for reinstatement under Rule 41(b) nor filed the motion within a reasonable time as required under Rule 60(b)(6). In so ruling, the Circuit Court acknowledged that the appellants should not be penalized for the period of time they were represented by Browning. Nevertheless, the Circuit Court stressed the fact that, following their retention of new counsel, an additional three terms passed before the motion to reinstate was filed. The Circuit Court stated:

> [E]ven assuming that Plaintiffs are able to meet the burden of establishing good cause for failing to file a motion to reinstate prior to the date Plaintiffs retained present counsel because Plaintiffs' former counsel misrepresented the status of plaintiffs' case, Plaintiffs are unable to establish "good cause" for failing to file a motion to

---

5. Likewise, *W. Va.Code,* 56-8-12 (1923), provides:

> Any court may, on motion, reinstate on the trial docket of the court any case dismissed, and set aside any nonsuit that may be entered by reason of the nonappearance of the plaintiff, within three terms after the order of dismissal shall have been made, or order of nonsuit entered; but any such order of reinstatement shall not be entered until the accrued costs in such case shall have been paid.

6. West Virginia Trial Court Rule 2.10. provides that for the Tenth Judicial Circuit, Raleigh County, the terms of the Circuit Court shall commence each year "on the second Monday in January, May and September." *See generally,* W. Va. Const. art. VIII, § 5, concerning the times circuit courts are required to sit.

7. West Virginia Rule of Civil Procedure 60(b), including subsection (6) thereof, provides in part:

> (b) *Mistakes; inadvertence; excusable neglect; unavoidable cause; newly discovered evidence; fraud, etc.*—On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final

judgment, order or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken.

8. Ms. Goodman was retained by the appellants in August 2002. Thereafter, the September 2002, January 2003 and May 2003 terms of court passed, and a fourth term began on September 8, 2003 (the second Monday in September). *See,* West Virginia Trial Court Rule 2.10. *supra.* The motion to reinstate was not filed until September 24, 2003.

reinstate for more than three additional terms *after* Plaintiffs retained present counsel and discovered this Court's dismissal order.

\* \* \* \* \* \*

The Court must now determine whether the motion was filed within a "reasonable time" following the entry of the order of dismissal within the meaning of Rule 60(b). That order, as stated above, was entered on December 30, 1999, and the motion to reinstate was filed on September 24, 2003. It is not disputed that during the period between the order and the motion, present counsel replaced Mr. Browning no earlier than August 2002. Three terms expired while Mr. Browning was responsible, and three more terms expired after present counsel learned of the dismissal. \* \* \* [I]t is the opinion of the Court that the motion to reinstate, if treated as a Rule 60(b) motion for relief from a judgment, was not timely filed.

In March 2005, this Court granted the appellants' petition for appeal.

## II.

### Standard of Review

■ This Court's general standard of review under both Rule 41(b) and Rule 60(b) is whether the ruling of the circuit court constituted an abuse of discretion. With regard to Rule 41(b), and its related statutory provision, *W. Va.Code,* 56–8–12 (1923), the syllabus point in *Murray v. Roberts,* 117 W.Va. 44, 183 S.E. 688 (1936), holds:

A motion to reinstate a dismissed action under the terms of *Code,* 56–8–12 [W. Va. R.C.P. 41(b)], is addressed to the sound discretion of the trial court, and, in the absence of a showing of abuse of that discretion, the action of the trial court upon such motion will not be disturbed upon writ of error. *Higgs v. Cunningham,* 71 W.Va. 674, 77 S.E. 273 [1913].

Syl. pt. 1, *Covington v. Smith,* 213 W.Va. 309, 582 S.E.2d 756 (2003). *See also,* Syl. pt. 4, *White Sulphur Springs v. Jarrett,* 124 W.Va. 486, 20 S.E.2d 794 (1942), holding that a trial court, "upon a motion to reinstate a suit or action, under *Code,* 56–8–12, is vested with a sound discretion with respect thereto; but that discretion can only operate on evidence tending to establish facts upon which a finding can be based." Syl. pt. 1, *Belington Bank v. Masketeers Company,* 185 W.Va. 564, 408 S.E.2d 316 (1991); syl., *Snyder v. Hicks,* 170 W.Va. 281, 294 S.E.2d 83 (1982); 6A M.J., *Dismissal, Discontinuance and Nonsuit* § 18 (2001).

■ Similarly, this Court, in syllabus point 5 of *Toler v. Shelton,* 157 W.Va. 778, 204 S.E.2d 85 (1974), held as follows concerning Rule 60(b): "A motion to vacate a judgment made pursuant to Rule 60(b), W. Va. R.C.P., is addressed to the sound discretion of the court, and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." Syl. pt. 6, *Law v. Monongahela Power Company,* 210 W.Va. 549, 558 S.E.2d 349 (2001); syl. pt. 4, *Rose v. Thomas Memorial Hospital Foundation,* 208 W.Va. 406, 541 S.E.2d 1 (2000); syl. pt. 1, *Blair v. Ford Motor Credit Company,* 193 W.Va. 250, 455 S.E.2d 809 (1995). *See also,* Lugar & Silverstein, *West Virginia Rules of Civil Procedure,* p. 466 (Michie 1960), stating that the granting of motions under Rule 60(b) "rests within the sound discretion of the trial court and may be upon such terms as the court finds just."

## III.

### Discussion

Appellants contend that the Circuit Court abused its discretion in denying their motion to reinstate the personal injury action. Specifically, Ms. Goodman indicates that her analysis of the possibility of reinstatement was initially based upon this Court's opinion in *Covington, supra,* which confirmed the three term limit on reinstatement set forth in Rule 41(b). Ms. Goodman concluded therefrom that, as a result of the neglect of Mr. Browning, the filing of a motion to reinstate would be untimely. In September 2003, however, she became aware of the exception to the three term limit recognized in *Arlan's, supra.* Thereafter, on September 24, 2003, she filed the motion to reinstate, citing, *inter alia,* Browning's misconduct as good cause for returning the action to the docket.

The appellees, on the other hand, assert that Ms. Goodman's initial unawareness of

*Arlan's* does not fall within the limited exception set forth therein and, thus, does not warrant a reinstatement of the action. The appellees further argue that the Circuit Court, while acknowledging Browning's neglect, correctly focused its refusal to reinstate upon the fact that, following the retention of Ms. Goodman, an additional three terms passed before the motion to reinstate was filed.

■ In *Covington,* the Circuit Court of Raleigh County dismissed, in 2000, an action filed in 1998 for failure to prosecute. Thereafter, the Circuit Court denied the plaintiffs' motion to reinstate even though their prior attorney in the action had exhibited a pattern of neglect and deceit toward them. This Court reversed in *Covington* upon the basis that the misconduct of the prior attorney, and the attempts of the plaintiffs to monitor the action, constituted good cause for reinstatement. In so holding, this Court cited syllabus point 1 of *Dimon v. Mansy,* 198 W.Va. 40, 479 S.E.2d 339 (1996), which states:

> "Under W. Va. R. Civ. P. 41(b), in order to reinstate a cause of action which has been dismissed for failure to prosecute, the plaintiff must move for reinstatement within three terms of entry of the dismissal order and make a showing of good cause which adequately excuses his neglect in prosecution of the case." Syl. pt. 1, *Brent v. Board of Trustees of Davis & Elkins College,* 173 W.Va. 36, 311 S.E.2d 153 (1983).

*State ex rel. Lloyd v. Zakaib,* 216 W.Va. 704, 613 S.E.2d 71, 73 (2005); *Anderson v. King,* 210 W.Va. 170, 172, 556 S.E.2d 815, 817 (2001); syl., *Callow v. Jacob,* 201 W.Va. 665, 500 S.E.2d 290 (1997). As this Court made clear, the plaintiffs, in *Covington,* "timely filed their reinstatement motion within three terms" of the Circuit Court's dismissal order. 213 W.Va. at 321, 582 S.E.2d at 768.

■ Although not directly applicable herein because of the timeliness of the plaintiffs' motion in *Covington,* this Court noted in the *Covington* opinion that *Arlan's* recognized an exception to the three term limit for rein-

statement under Rule 41(b). 213 W.Va. at 321, 582 S.E.2d at 768. Syllabus point 1 of *Arlan's* holds:

> When a party fails to make a reinstatement motion within the time period prescribed by R.C.P. 41(b) and W. Va.Code, 56–8–12, such party is not entitled to reinstatement of a case to the docket and the court is without power to grant such relief, except where the parties consent, or where good cause is shown such as fraud, accident, or mistake.

*Taylor v. Smith,* 171 W.Va. 665, 667, 301 S.E.2d 621, 624 (1983).[9]

That exception to the three term limit notwithstanding, this Court, in *Arlan's,* held that, inasmuch as certain parties to the litigation therein were never served with notice of the motion to reinstate, the circuit court was without jurisdiction to return the action to the docket.

Here, the Circuit Court considered the *Arlan's* exception but found this Court's decision in *Taylor, supra,* more relevant to the circumstances of this action. In *Taylor,* the plaintiff's personal injury action was dismissed in 1975 under Rule 41(b) for failure to prosecute. In the meantime, the plaintiff's attorney was suspended from the practice of law, and the plaintiff obtained a new attorney who did not discover the dismissal order until June 30, 1978. The new attorney, however, waited almost one year before moving for reinstatement on June 19, 1979. The circuit court denied the motion as untimely.

This Court, in *Taylor,* held that the circuit court did not abuse its discretion in denying reinstatement. As the *Taylor* opinion states in part: "[C]ounsel failed to make a reinstatement motion within a reasonable time after discovery of the dismissal order. * * * *Arlan's* provides no excuse for his failure to promptly move for reinstatement." 171 W.Va. at 667, 301 S.E.2d at 624. *See also, Rollyson v. Rader,* 192 W.Va. 300, 452 S.E.2d 391 (1994), which summarizes this area of the law as follows:

---

**9.** *See also,* 27 C.J.S., *Dismissal and Nonsuit* § 85 (1999), citing *Arlan's* and stating that "circumstances such as fraud, accident, or mistake may

allow a court to vacate a dismissal after the term at which it was granted, or after the expiration of the time fixed by statute or court rule."

A plaintiff whose case is dismissed for failure to prosecute is provided with ample opportunity—three terms of court—to move for reinstatement of his case. Absent evidence of fraud, accident or mistake, failure to move for reinstatement within three terms will result in the refusal to reinstate the matter on the court docket.

192 W. Va. at 303, 452 S.E.2d at 394.

■ In the action now to be determined, the dismissal order was entered in 1999, and the motion to reinstate was filed on September 24, 2003. In the intervening time, the appellants, in May 2002, discovered that their action had been dismissed and, in August 2002, retained new counsel. As in *Taylor*, however, approximately one year passed before reinstatement was sought. Thus, the Circuit Court concluded that, placing the time of Browning's representation of the appellants aside, the appellants neither established good cause for reinstatement under Rule 41(b) nor filed the motion to reinstate

within a reasonable time as required under Rule 60(b)(6) [10].

In so ruling, the Circuit Court considered the exception set forth in *Arlan's*. The Circuit Court determined, however, that the fact that Ms. Goodman was not aware of the exception until September 2003 did not fall within the description of good cause therein as including "fraud, accident or mistake." This Court agrees with that determination and is of the opinion that it would expand the exception to the three term limit under *Arlan's* too far to apply it in these circumstances.[11]

### III.

### Conclusion

The appellees not having consented to reinstatement of the personal injury action, this Court is of the opinion that the Circuit Court's denial of the motion to reinstate is "protected by the parameters of sound discretion." *Parker v. Knowlton Construction*

---

10. As indicated above, the appellants rely upon subsection (6) which provides a remedy under Rule 60(b) for "any other reason justifying relief from the operation of the judgment." Inasmuch as the introductory language of Rule 60(b) states that the Rule provides a remedy from a "final judgment, order, or proceeding," whereas subsection (6) thereof refers solely to the word "judgment," a question arises concerning whether subsection (6) may be applied in the context of a "dismissal," such as the dismissal for failure to prosecute in this action.

In prior cases, Rule 60(b) has been applied in the context of dismissals. For example, syllabus point 1 of *Davis v. Sheppe*, 187 W.Va. 194, 417 S.E.2d 113 (1992), holds: "A motion under Rule 60(b) of the West Virginia Rules of Civil Procedure is the appropriate remedy to utilize when a plaintiff's case is dismissed because of the plaintiff's failure to appear for trial." Syl. pt. 1, *Van Pelt v. Rent–A–Center*, 187 W.Va. 483, 419 S.E.2d 896 (1992). *See also*, syl. pt. 2, *State ex rel. McDowell County Sheriff's Department v. Stephens*, 192 W.Va. 341, 452 S.E.2d 432 (1994), stating that, when an action is dismissed as a discovery sanction, a party may seek relief, *inter alia*, under Rule 60(b). By analogy, in *Fuller v. Quire*, 916 F.2d 358 (6th Cir.1990), the Court of Appeals held that the District Court acted within its discretion under comparable, federal Rule 60(b) in reinstating an action which had been dismissed because of the plaintiff's failure to appear at a docket call.

Moreover, this Court notes that of the six subsections of Rule 60(b) of the West Virginia Rules of Civil Procedure, only the last three, (4), (5)

and (6), expressly use the word "judgment." As to the first three subsections, Rule 60(b) includes a provision to the effect that the motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the "judgment, order, or proceeding" was entered or taken.

In any event, under the circumstances herein this Court need not definitively or preemptively settle the question of the availability of Rule 60(b)(6) as a ground for relief from the dismissal of an action. Competing with a strict application of subsection (6) are various equitable principles commonly associated with Rule 60(b). *See*, syl. pt. 6, *Toler, supra*, observing that Rule 60(b) is remedial in nature and designed to "facilitate the desirable legal objective that cases are to be decided on the merits." Thus, we leave the question of whether subsection (6) is solely applicable to "judgments," and the additional question of the relationship of a dismissal to the phrase "judgment, order or proceeding" for another day.

11. While we find that the Circuit Court did not abuse its discretion herein, we observe that the Circuit Court would have equally been within its discretion in this action to have concluded that *Arlan's* was simply not applicable herein as none of the delineated bases for good cause, set forth in *Arlan's*, were present. Since there was no accident or mistake, and because none of the parties were alleged to have engaged in fraud, the three term rule set forth in Rule 41(b) expired in late 2000, before Ms. Goodman's representation was commenced.

*Company,* 158 W.Va. 314, 329, 210 S.E.2d 918, 927 (1975). Upon all of the above, the June 11, 2004, order of the Circuit Court of Raleigh County, West Virginia, is affirmed.

Affirmed

Justice STARCHER dissents and reserves the right to file dissenting opinion.

STARCHER, J., dissenting:

(Filed Dec. 16, 2005)

I write separately to reiterate the "positive misconduct" rule that I outlined in my concurrence to *Covington v. Smith,* 213 W.Va. 309, 582 S.E.2d 756 (2003). I dissent to the majority opinion's failure to adopt the rule because, factually, this case is a perfect example of why such a remedial rule is needed.

The positive misconduct rule is simple: where an attorney engages in extreme, inexcusable, repeated neglect or inaction that is so disastrous that the client is effectively and unknowingly deprived of legal representation, the client will not be held responsible for the attorney's neglect. It is called positive misconduct because the inaction is so severe that it rises to a level of, and often seems to be accompanied later by, deliberate misconduct on the part of the lawyer. *See Covington,* 213 W.Va. at 326–27, 582 S.E.2d at 773–74 (Starcher, J., concurring).

The positive misconduct rule doesn't encompass simple attorney mistakes, nor does it apply to deliberately-chosen delay strategies by attorneys which have an unintended consequence. The rule kicks in when the attorney takes a course of action that is anathema to the role of an aggressive advocate. It protects a client when a lawyer goes on a frolic and detour from his responsibilities with disastrous results.

Whatever the lawyer's motivation—whether stupidity, cupidity, timidity, or mental illness—when the lawyer's conduct, in effect, obliterates the existence of the attorney-client relationship, and the client seeking relief is relatively free from negligence, then the client should be excused from association with the lawyer and freed from the consequences of the lawyer's actions.

In this case, pure sloth by attorney Robert Browning got a good case dismissed in December 1999. Pure, positive misconduct by the attorney got that dismissal hidden from his clients for several years. This case, in a nutshell, is a classic example of positive misconduct by a lawyer. The circuit court should have permitted the case to be reinstated through the operation of this doctrine.

I concede that it took the plaintiffs' new lawyer, Sherri D. Goodman, until September 2003—almost four years after the dismissal—to take action to get the case reinstated, and the defendants might have suffered some prejudice by the intervening time period. But, the plaintiffs never learned of Browning's misconduct until May 2002 and did not hire Ms. Goodman until August 2002. Up to September 2003, Ms. Goodman reasonably relied upon the three term rule in Rule 41 of the *Rules of Civil Procedure* and *W.Va.Code,* 56–8–12 in forming her legal opinion that, as a matter of law, the case simply could not be reinstated. I dissent because the majority opinion now punishes the plaintiffs for their misplaced trust in Browning, and punishes them because Ms. Goodman initially performed her role as a lawyer and obeyed the written law.

Ms. Goodman showed some moxie in this case when, on September 24, 2003, she encouraged the circuit court to toss the three term rule to the wind and do the right thing—reinstate the plaintiffs' case so it could be resolved on its merits. Ms. Goodman raised the Court's opinion and my separate opinion in *Covington*—which was filed on July 11, 2003—as routes the trial court could take to fairly remedy attorney Browning's flagrant abandonment of his responsibilities to the plaintiffs. Unfortunately, the trial court and now this Court have refused to take that step toward fairness.

The circuit court, and this Court, should not have "ducked" the issue; they should have done the right thing and reinstated the plaintiffs' case through the operation of the positive misconduct rule. I therefore respectfully dissent.